UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SAURABH S.,

          Petitioner,

    v.

WARDEN OF THE CALIFORNIA CITY
DETENTION FACILITY, et al.,

          Respondents.

No. 1:26-cv-00645-TLN-SCR

**ORDER**

This matter is before the Court on Petitioner Saurabh S.'s ("Petitioner") *pro se* request for injunctive relief (ECF No. 1), which the Court construed as a motion for temporary restraining order ("TRO") (ECF No. 6).[1]  Respondents filed an opposition.  (ECF No. 9.)  Petitioner replied. (ECF No. 11.)  For the reasons set forth below, the Court issues a TRO requiring Respondents to IMMEDIATELY RELEASE Petitioner.  Respondents are further ORDERED TO SHOW CAUSE why the Court should not grant the Petition for Writ of Habeas Corpus and enter judgment in favor of Petitioner.

///

///

///

///

///

---

[1]  Since Petitioner's initial filing of his habeas petition, the Court appointed counsel who is now enrolled in this case and filed a reply on behalf of Petitioner.  (ECF Nos. 6, 8, 11.)

1

## I.   FACTUAL BACKGROUND[2]

Petitioner is a citizen of India who entered the United States on March 27, 2023, at Lukeville, Arizona.  (ECF No. 11 at 1.)  After a brief four-day detention, immigration authorities released Petitioner on his own recognizance.  (*Id.*)  Petitioner thereafter filed Form I-589, seeking asylum, withholding of removal, and protection under the Convention Against Torture.  (*Id.*)  While awaiting the disposition of his request for relief, Petitioner diligently abided by the conditions of his release, maintain a clean criminal record and checking in with U.S. Immigration and Customs Enforcement ("ICE") as directed.  (*Id.* at 2.)  On April 2, 2025, Petitioner received a call from ICE advising he needed to check in.  (*Id.*)  This was unusual, as Petitioner had already checked in on January 23, 2025, and was not scheduled for another check-in until 2026.  (*Id.*)  Nevertheless, Petitioner reported as directed and was detained without any notice, warrant, or hearing.  (*Id.*)  Petitioner has remained detained for the last ten months.  (*Id.*)

On January 26, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus, challenging the lawfulness of his civil detention and seeking immediate release. (*See* ECF No. 1.) On January 28, 2026, the Court issued an Order construing Petitioner's *pro se* request for injunctive relief as a motion for TRO and ordered Respondents to file a response.  (ECF No. 6.) In response, Respondents filed a motion to dismiss the Petition.  (ECF No. 9.)  Petitioner filed a reply.  (ECF No. 11.)

## II.   STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

///

---

[2]   The instant factual background is taken largely verbatim from Petitioner's reply brief. (ECF No. 11.)

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

### III.   ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

#### A.   Likelihood of Success on the Merits

Petitioner establishes a likelihood of success on his claim that his detention violates the Fifth Amendment Due Process Clause. The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

##### i.   Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by

statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court agrees with Petitioner that he has a protected liberty interest, as he was previously released on March 23, 2023. (ECF No. 11 at 5.) Under *Morrisey*, this release implied a promise that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. Petitioner's liberty interest has been strengthened over time. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest). Thus, Petitioner has a clear interest in his continued freedom.

Respondents' sole argument in opposition to a TRO is that, at the time of Petitioner's arrest, he was subject to mandatory detention under 8 U.S.C. § 1225(b) because he is an "applicant for admission."[3] (ECF No. 9 at 1–2.) This Court has now ruled on this same issue countless times and courts throughout the Ninth Circuit have overwhelmingly rejected

---

[3] Respondents also request the Court hold its ruling on the merits in abeyance pending the Ninth Circuit's decision regarding the appeal in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). (ECF No. 9 at 1.) The Court denies this request. As discussed below, the Court finds Petitioner is likely to succeed on the merits of his claim and the Court will not delay injunctive relief on the prospective chance a pending appeal could change this outcome.

4

Respondents' legal position to find the government's re-classification of individuals under the mandatory detention policy unlawful. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS mandatory detention policy for a nationwide certified class).

As this Court has previously noted, it will not reconsider its position absent new argument, case law, or distinguishable facts. Respondents provide no such grounds for reconsideration. (*See* ECF No. 9.) Thus, at the time of Petitioner's detention, Petitioner was not an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Petitioner was instead subject to § 1226(a) and was entitled to the process that statute requires, including a bond hearing at a minimum. Accordingly, Petitioner has a protected liberty interest in his continued freedom protected by the Due Process Clause.

*ii.        Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. Petitioner asserts that the fact he has been released for only two years serves only to strengthen his interest in his continued liberty. (ECF No. 11 at 5.) Despite that, Petitioner has now been detained since April 2, 2025, without notice or opportunity to be heard. (*Id.* at 2.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

5

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  Indeed, Petitioner notes that he has not received any bond or custody redetermination hearing where a neutral arbiter could make any findings as to whether Petitioner presents a risk of flight or danger to the community.  (ECF No. 11 at 6.) Petitioner also notes that the veracity of Respondents' allegation that "criminal records from India show that Petitioner fled India after being charged with serious crimes,"[4] and their impact on the flight and danger analysis, should be explored at a bond hearing before a neutral arbiter.  (*Id.*) The Court agrees.  Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

///

---

[4]    The Court also notes Respondents have attached a variety of documents of unknown origin allegedly pertaining to Petitioner.  (*See* ECF No. 9 at 4–17.)  Petitioner notes these documents contain hearsay and conclusory statements.  (ECF No. 11 at 6.)  The Federal Rules of Evidence do not strictly apply in preliminary injunction proceedings.  *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988).  Courts have discretion whether to consider inadmissible evidence at this stage, but inadmissibility will bear on the weight of the evidence.  *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).  However, Respondents provide only a bare assertion that Petitioner fled India after being charged with serious crimes and provide minimal detail about the contents of the records.  Respondents advance no substantive argument with respect to these records.  The Court therefore declines to consider them.

Here, Respondents do not argue that Petitioner is a danger to the community or a flight risk. (*See generally* ECF No. 9.) Therefore, on the record before the Court, at the time Respondents detained Petitioner, they had no legitimate interest. Moreover, the cost and time of procedural safeguards are minimal here. Notice and custody hearings are routine processes for Respondents with minimal burden. Indeed, these are the very processes that were owed to Petitioner under § 1226(a). Any delay in re-detention (if justified) for time to provide notice and a hearing would have been minimal. It is also less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

In balancing the government's interest in effectuating immigration laws against the considerable potential for erroneous deprivation and Petitioner's liberty interest, the Court finds that Petitioner was entitled to notice and a hearing at minimum. Respondents did not provide either. Nor did they provide a post-deprivation bond hearing as required under § 1226(a). Thus, Petitioner has shown he is likely to succeed on the merits of his due process claim.

### B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his immigration proceedings. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

///

C.      Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Any burden imposed by requiring Respondents to comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for injunctive relief and issues a TRO ordering Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's request for injunctive relief, contained in his habeas petition and construed as a motion for temporary restraining order, is GRANTED;

2. Respondents must IMMEDIATELY RELEASE Petitioner Saurabh S. from custody under the same conditions he was released prior to his current detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  **Respondents must file a notice**

**certifying compliance with this provision of the Court's Order by February 17, 2026**;

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present;

4. Now that Petitioner has Court-appointed counsel, Petitioner may supplement or amend his Petition for Writ of Habeas Corpus by **February 19, 2026**;

5. Respondents are ORDERED TO SHOW CAUSE why this Court should not grant the Petition for Writ of Habeas Corpus (and any filed supplement or amendment) and enter judgment in favor of Petitioner.  Respondents shall file responsive papers by **February 23, 2026**.  Petitioner may file a reply, if any, by **February 25, 2026**.  **The parties shall indicate in their briefing whether they request a hearing**.  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule; and

6. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: February 12, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

9